**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

——————————————————————— x

ANDREW VILLARUEL, individually and on　　:
behalf of all others similarly situated,　　:
　　　　　　　　　　　　　　　　　　　:　　　　Case No.
　　　　　*Plaintiff,*　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
RED'S ALL NATURAL, LLC,　　　　　　　:　　　**CLASS ACTION COMPLAINT**
　　　　　　　　　　　　　　　　　　　:
　　　　　*Defendant.*　　　　　　　　　:　　　**JURY TRIAL DEMANDED**
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
——————————————————————— x

1

Plaintiff Andrew Villaruel (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. Red's All Natural, LLC (hereinafter "Defendant") manufactures, markets, labels and sells a Steak, Cilantro, Lime Burrito (the "Products") throughout the country.

2. Defendant violated the Food Allergen Labeling and Consumer Protection Act of 2004, 21 U.S.C § 343(w), which requires it to disclose the presence of allergens such as egg on packaged foods it manufactures and sells.

3. On July 29, 2026, the U.S. Department of Agriculture's Food Safety and Inspection Service (the "FSIS") issued a public health alert for the Products due to misbranding and an undeclared allergen. The Products contains egg, a known allergen, which is not declared on the product label.

4. The Products are 3-lb 2-oz. cartons containing 10 individually wrapped "RED"S STEAK CILANTRO AND LIME BURRITO" on the front package label with production lots, L1 SD6170 1503, L1 SD6170 1535, L1 SD6170 1606, L1 SD6170 1639, L1 SD6170 1717, L1 SD6170 1750, L1 SD6170 1831, L1 SD6170 1908, L1 SD6170 1954, L1 SD6170 2031, L1 SD6170 2108, L1 SD6170 2130 on the side of the package label.

5. The individual Products bear the establishment number "EST. 46069" inside the USDA mark of inspection.

6. The Products were produced on Jun 19, 2026.

2

7.     According to the FSIS, it issued the public health alert to ensure that consumers with allergies to egg products are aware that this Product should not be consumed.  No recall was requested because the affected Products are no longer available for purchase.

8.     Plaintiff purchased the Products for consumption by him and his family, including two nieces who live in the same building who routinely eat at his home. One of those nieces, four-year-old L.S., was born with an allergy to eggs that she continues to suffer from.

9.     Defendant has improperly, deceptively and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products contain the known allergen, egg.

10.     Consumers like Plaintiff trust manufacturers such as Defendant to sell products that are accurately labeled.

11.     Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that when a product they purchase does not disclose an allergen that it, in fact, does not contain said allergen.

12.     Unfortunately for consumers, like Plaintiff, the Products were not accurately labeled because they omitted the presence of egg.

13.     Plaintiff and Class Members purchased a product that they would not have purchased and/or paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels regarding egg.  Thus, Plaintiff and Class Members suffered a financial injury.

14.     Defendant's conduct also violated, *inter alia*, New York General Business Law §§ 349 and 350, and breached its warranties to consumers regarding the Products.

3

15. Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

16. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2). Plaintiff is a citizen of the State of New York and resides in Kings County, New York. Defendant is a Delaware limited liability company with its principal place of business in Franklin, Tennessee. Upon information and belief, the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

17. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York and supplies goods within the State of New York.

18. Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York. In addition, the transactions and occurrences giving rise to this action took place in this District.

## PARTIES

### PLAINTIFF

*Plaintiff Andrew Villaruel*

19. Plaintiff is an individual consumer who, at all times material hereto, was a citizen of Brooklyn, New York. During the Class Period he purchased the Products via Amazon Fresh.

### DEFENDANT

*Defendant Red's All Natural, LLC*

20. Defendant is a limited liability corporation organized and existing under the laws of the State of Delaware with its principal place of business in Franklin, Tennessee. Defendant

4

sells the Products throughout the country, including Costco and Amazon Fresh. Defendant is responsible for the contents, ingredients, labeling and packaging of the Products.

## FACTUAL BACKGROUND

21.    Defendant manufactures, markets, advertises, labels and sells the Products.

22.    Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies, such as Defendant, have capitalized on consumers' desire Products that meet certain criteria, and indeed, are willing to purchase them and to also pay, and have paid, a premium for products that do so.

23.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains allergens, such as egg, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain on the Products' packaging or labels.

24.    The Products' packaging does not identify egg. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, egg, a known allergen.

25.    However, the Products did contain egg.

26.    Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, labeling and selling the Products for many years.

27.    Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products and the ingredients the Products contain. Such knowledge is solely within the possession of Defendant.

28.    Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products, including its ingredients.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

29.    Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

30.    Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest, in particular when they or a loved one is allergic to certain ingredients.  Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, as well as the Products' labels and the ingredients listed on them.

31.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

32.    As an immediate, direct and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a.    Purchased a product that they would not have otherwise purchased;

b.    Paid a sum of money for Products that were not what Defendant represented;

c.    Paid a premium price for Products that were not what Defendant represented;

d.    Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

e.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

6

f.    Were denied the benefit of the properties of the Products Defendant promised.

33.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to purchase the Products and/or would not have been willing to pay the same amount for the Products they purchased.

34.    Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

35.    Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products.  Had Plaintiff and Class Members known the truth about the Products, i.e., they contained egg, they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

## CLASS ALLEGATIONS

36.    Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution.

37.    The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Nationwide Class").

38.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

39.    The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

40.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

41.    Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

42.    Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

  a.    Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

  b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent or unlawful business practices with respect to the advertising, marketing, labeling and sale of its Products;

  c.    Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public and

e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

43. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

44. Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer protection claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation and counsel intends to vigorously prosecute this action.

45. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

46. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

9

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

10

47. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

48. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

49. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

50. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant.

51. There is no adequate remedy at law.

52. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

53. Defendant's improper consumer-oriented conduct—including failing to disclose that the Products contain eggs —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly and with reckless disregard for the truth.

54.    Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled and worth less than what was paid for them, if anything. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

55.    Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy the Products.

56.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

57.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

58.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

60.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination

12

thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

61. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and does not list that the Products contain egg.

62. Plaintiff and the New York Subclass Members have been injured inasmuch as they saw the labeling, packaging and advertising and purchased Products that were mislabeled and worth less than what was paid for them, if anything. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

63. Defendant's advertising, packaging, and the Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

64. Defendant made its untrue and/or misleading statements and representations willfully, wantonly and with reckless disregard for the truth.

65. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

66. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

67. Defendant's material misrepresentations were substantially uniform in content, presentation and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

68.   As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**NEW YORK AGRICULTURE AND MARKETS LAW (NY CLS Agr. & M § 201)**
**(On Behalf of Plaintiff and the New York Subclass)**

69.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70.   Section 201 ("Misbranding of Food") of the New York Agriculture and Markets Law (NY CLS Agr. & M § 201) states that "Food shall be deemed to be misbranded . . . 1. If its labeling is false or misleading in any particular."

71.   The labeling on the Products is "false and misleading" because it fails to disclose the presence of ] eggs.

72.   As a result of the foregoing, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
**BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY**
**(On Behalf of the Nationwide Class and the New York Subclass)**

73.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.   An implied warranty of merchantability arises with respect to Defendant's sale of the Products.

75.   Defendant is in the business of selling the Products.

76.   The Products would not pass without objection in the trade, since the packaging does not disclose the presence of milk and egg.

14

77.    The Products are not adequately contained, packaged and labeled since the packaging does not disclose the presence of egg.

78.    Plaintiff and consumers cannot reasonably expect that a product that is required to disclose the presence of milk and eggs nonetheless contains egg.

79.    The inability of the Products to meet the label description was wholly due to the Defendant's fault and without Plaintiff's or Class Members' fault or neglect, and was solely due to the Defendant's manufacture, marketing, labeling and sale of the Products to the public.

80.    As a result of the foregoing, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and

15

reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

DATED: July 31, 2026

Respectfully submitted,

By: /s/ *Blake Hunter Yagman*
Blake Hunter Yagman
**YAGMAN PLLC**
626 RexCorp Plaza
Uniondale, New York 11556
Telephone: (929) 709-1493
*blake.yagman@yagmanpllc.com*


Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 243-0500
*mreese@reesellp.com*

Charles D. Moore *
**REESE LLP**
121 N. Washington Ave., 4th Floor
Minneapolis, MN 55401
Telephone: (212) 643-0500
*cmoore@reesellp.com*

* *Pro hac vice* application forthcoming

*Counsel for Plaintiff and the Class*